**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

MF GLOBAL HOLDINGS LTD., *et al.*,

                        Debtors.

MF GLOBAL HOLDINGS USA INC., by and through MF GLOBAL HOLDINGS LTD., as Plan Administrator,

                        Plaintiff

                        vs.

HEARTLAND CO-OP,

                        Defendant.

NOT FOR PUBLICATION

Chapter 11
Case No. 11-15059 (MG)
(Jointly Administered)

Adv. Proc. No. 17-01000 (MG)

**MEMORANDUM OPINION AND ORDER DENYING HEARTLAND CO-OP'S**
**MOTION TO DISMISS**

*A P P E A R A N C E S:*

FOLEY & LARDNER LLP
*Counsel for Defendant Heartland Co-Op*
90 Park Avenue
New York, New York 10016
By:  Geoffrey S. Goodman, Esq.
     Max B. Chester, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
*Counsel for MF Global Holdings USA Inc.*
*and MF Global Holdings Ltd., as Plan Administrator*
51 Madison Avenue, 22nd Floor
New York, New York 10010
By:  Susheel Kirpalani, Esq.
     Blair A. Adams, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       Defendant Heartland Co-Op ("Heartland") moves to dismiss the adversary complaint

("Complaint") filed by MF Global Holdings USA Inc. ("MF Global USA"), by and through MF

Global Holdings Ltd., as Plan Administrator ("MF Global" or "Plan Administrator"). The Complaint contains a single cause of action for breach of contract seeking to recover damages from Heartland following early termination of a derivative contract upon MF Global's bankruptcy filing on October 31, 2011. The issue raised by the motion to dismiss is whether MF Global, through its Schedules, Disclosure Statement or confirmed Plan, preserved the cause of action against Heartland asserted in the Complaint. Heartland contends that the Disclosure Statement and Plan did not adequately preserve the cause of action against Heartland and the claim is therefore barred by *res judicata*. The Plan Administrator, on the other hand, argues that the claim against Heartland was adequately preserved by disclosures in the Schedules, Disclosure Statement and Plan, and, further, that Heartland had notice of the claim and the reservation of rights before the Plan was confirmed. For the reasons explained below, the Court concludes that the claim was properly preserved by the Schedules, Disclosure Statement and Plan. Therefore, the motion to dismiss is **DENIED.**

## I.    BACKGROUND

On April 9, 2010, MF Global Market Services, LLC ("MFGMS") and Heartland entered into a standard-form 1992 ISDA Master Agreement, a copy of which is attached as Exhibit A to the Complaint (the "Heartland Master Agreement").[1] (Complaint ¶ 15.) Section 5(a)(vii) of the Heartland Master Agreement provides that an Event of Default occurs when, among other things, either party to the contract or any Credit Support Provider (in this case, MF Global) files for bankruptcy. (*Id.* ¶ 16.) In the schedule to the Heartland Master Agreement, MFGMS and Heartland agreed that, in the case of such an Event of Default, the party that had not defaulted

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Defendant's Memorandum of Law in Support of Motion to Dismiss Adversary Complaint (ECF Doc. # 7).

(the "Non-defaulting Party") would have the right to terminate the parties' transactions by designating an Early Termination Date. (*See* Heartland Master Agreement § 6(a) & Schedule Part 1(g).) Heartland terminated the Heartland Master Agreement, as it had the right to do. Heartland was not a scheduled creditor; nor did it file a proof of claim. The Plan did not provide any distribution or treatment for Heartland.

The Heartland Master Agreement contains contract provisions for calculating losses arising from early termination. The Plan Administrator seeks to recover damages from Heartland arising from the early termination. The parties do not dispute the existence of a valid contract between the parties and of the long-standing dispute between them about the amount of damages, if any, that MF Global suffered as a result of the early termination.

This case does not involve the strong policies requiring disclosure of preserved claims—namely, preventing a debtor from either (i) luring a creditor to support a plan only to find itself sued for a previously undisclosed claim after confirmation, or (ii) permitting a reorganized debtor that failed to disclose a claim that was property of the estate to assert the claim after confirmation. Here, Heartland was not a creditor, and the debtors were liquidated. Therefore, the Plan Administrator argues that *res judicata* does not apply, or if it applies, it preserves the cause of action against Heartland rather than barring it. As a result, the Plan Administrator argues that the motion to dismiss should be denied.

The Plan Confirmation Order specifically approved the Plan's "preservation of Causes of Action" and provided that "[i]n accordance with § 1123(b)(3) of the Bankruptcy Code, Article IV.G of the Plan provides for the Plan Administrator, on behalf of each Debtor, to retain and enforce all claims, demands, rights and Causes of Action that every Debtor and Estate may hold against any Person or Entity to the extent not otherwise released." (*Order Confirming Amended*

*and Restated Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code for MF Global Holdings Ltd., MF Global Finance USA Inc., MF Global Capital LLC, MF Global FX Clear LLC, MF Global Market Services LLC, and MF Global Holdings USA Inc.*, at 11, 14 (the "Confirmation Order," ECF Doc. # 1288).) Heartland received notice of the confirmation hearing; it raised no objection to the Plan.

On May 18, 2012, MFGMS filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. (*See* ECF Doc. ## 695, 700.) In Schedule G of MFGMS's Schedules of Assets and Liabilities, MFGMS disclosed more than 90 ISDA Master Agreements, including the Master Agreement at issue in this case, dated on or about April 9, 2010, by and among MFGMS and Heartland. (MFGMS Schedules, Schedule G at 30 (ECF Doc. # 700).) The Plan Administrator argues that, when combined with the language in the Disclosure Statement and Plan, the disclosures were sufficient to preserve the claim against Heartland.

The Statement of Financial Affairs accompanying the Schedules specifically highlighted the existence of the outstanding Master Agreements and the potential assets and liabilities associated with the termination of trades under those agreements:

> <u>Derivatives and Other Contractual Agreements.</u> The Debtors have attempted to list on Schedule G all of the derivative contracts that they were party to as of the Petition Date . . . [A] large number of the contracts listed on Schedule G may have been terminated before or subsequent to the Petition Date. Finally, assets and liabilities that may result, or may have resulted from the termination of derivative contracts are not included on the Debtors' Schedules B, D, or F, as may be applicable. Potential additional assets and/or liabilities associated with the Debtors' derivative contracts will not be disclosed until the Debtors have completed their analysis of their books and records and the numerous derivative transactions.

(MFGMS SOFA § V(5) (ECF Doc. # 695).) The Statement of Financial Affairs further provided that "[t]he Debtors and the Chapter 11 Trustee reserve all of their rights, claims, and causes of

4

action with respect to the contracts and agreements listed on Schedule G . . . ." (*Id.* § VI(5)(iv).)

As noted above, the Heartland Master Agreement is listed on Schedule G.

The introduction to the Disclosure Statement stated (in bold) that:

> **No reliance should be placed on the fact that a particular Claim or Interest or potential objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement. The Plan Administrator may investigate, file, and prosecute claims or Causes of Action against other Entities, including Holders of Claims or Interests and may object to or assert counterclaims against Holders of Claims or Interests after the Effective Date irrespective of whether this Disclosure Statement identifies any such Claims or Interests or objections to or counterclaims against any such Claims or Interests.**

(Disclosure Statement at 4 (ECF Doc. # 1111-1) (emphasis in original).)

The Disclosure Statement contained additional disclosures related to assets and liabilities associated with MFGMS's ISDA Master Agreements. Under the section of the Disclosure Statement titled "Other Potential Sources of Recovery," the first potential source of recovery listed is "Recovery of Trading Close-Out Valuation Under Certain Derivative Transactions." (Disclosure Statement § V(A) (ECF Doc. # 1111-1).) It is true, as Heartland argues, that the section only specifically describes a recovery that the Chapter 11 Trustee had already achieved—stating that "[t]he Chapter 11 Trustee has recovered in excess of $25 million for the Unregulated Debtors from the termination of certain master derivatives agreements and the related underlying transactions." (*Id.*) The Court does not believe that language can or should be read to limit the assertion of other claims by the estate or its representatives, such as the one asserted against Heartland; if that was the intent, it would have said so. Thus, any Master Agreement counterparty with MFGMS was on notice that MFGMS's estate was seeking to recover monies owed upon termination of its derivative transactions. Indeed, MF Global raised the issue of computing damages for early termination with Heartland before confirmation

5

of the Plan. The Disclosure Statement also provided that it "has been prepared based on a preliminary review of certain Proofs of Claims and the Schedules . . . ." (*Id.* at 131.) The Plan specifically refers the reader to those Schedules. (S*ee id.* at 51 n.18.)

The Plan includes a "Preservation of Causes of Action" clause, which provides in pertinent part:

> Except as provided in this Plan, the Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, in accordance with § 1123(b)(3)(B) of the Bankruptcy Code, the Plan Administrator, on behalf of each Debtor, shall have and retain and may enforce any claims, demands, rights and Causes of Action that any Debtor or Estate may hold against any Person or Entity to the extent not released otherwise, all of which are included within the Property of the Estate . . . . The Plan Administrator may pursue such claims, demands, rights or Causes of Action . . . , as appropriate, in accordance with the best interests of the beneficiaries of the Estates.

(Plan, Article IV(G) (ECF Doc. # 1382).)

The Plan further provides "[a] nonexclusive schedule of currently pending actions and claims brought by one or more Debtors or the Chapter 11 Trustee . . . ." It also stated that the specifically named actions "shall not be deemed an admission, denial or waiver of any claims, demands, rights or Causes of Action that any Debtor or Estate may hold against any Person or Entity," and that "[t]he Plan Proponents intend to preserve all such claims, demands, rights or Causes of Action (except to the extent any such claim is specifically released herein)." (*Id.*)

As already stated, the Disclosure Statement provides that "[t]he Plan Administrator may investigate, file, and prosecute claims or Causes of Action against other Entities . . . after the Effective Date irrespective of whether this Disclosure Statement identifies any such Claims or Interests or objections to or counterclaims . . . ." (Disclosure Statement at 4 (emphasis in original) (ECF Doc. # 1111-1).) The Plan Administrator was specifically authorized to "review,

6

reconcile, enforce, collect, compromise, settle, or elect not to pursue any and all Causes of Action or similar actions, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules" and "maintain, conserve, supervise, prosecute, collect, settle and protect the Property of the Estate (subject to the limitations described herein)." (*Id.* at 94–95.)

It is undisputed that Heartland received notice of the bankruptcy, including of the continued section 341(a) meeting of creditors (ECF Doc. # 709 at 204), bar date (ECF Doc. # 742 at 153), confirmation hearing (ECF Doc. # 1148 at 241), and Plan's effective date (ECF Doc. # 1496 at 143). Heartland did not object to the Plan or Disclosure Statement, nor did it object to the preservation of causes of action provisions contained therein.

## II.    DISCUSSION

The Complaint unquestionably asserts a breach of contract claim against Heartland. The only issue is whether the breach of contract claim was properly preserved in MF Global's Schedules, Disclosure Statement or Plan. The parties do not dispute that a bankruptcy court's order confirming a reorganization plan is a final judgment on the merits which is given preclusive effect under principles of *res judicata*, also known as claim preclusion. *See Sure-Snap Corp. v. State St. Bank and Trust Co.*, 948 F.2d 869, 870 (2d Cir. 1991) ("Restraining litigious plaintiffs from taking more than 'one bite of the apple' has been our avowed purpose since the common law doctrine of res judicata first evolved."). But *Sure-Snap* goes beyond that simple uncontroversial statement by making clear that "the well-established rule in *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972), asserts that 'any attempt by the parties or those in privity with them to relitigate any of the matters that were raised *or could have been raised therein* is barred under the doctrine *res judicata*. (Emphasis supplied).'" *Sure-Snap Corp.*, 948 F.2d at 873. Here, as previously stated, Heartland was not a creditor of the Debtors;

it was neither scheduled as a creditor nor did it file a proof of claim. In short, the estate claim (now asserted by the Plan Administrator) against Heartland was never adjudicated, nor could it have been as part of Plan confirmation. That, of course, is not a complete answer to whether the Plan Administrator now is barred from asserting the claim, but it severely undercuts Heartland's arguments.

The Plan Administrator argues that disclosure of reserved causes of action in a debtor's schedules is sufficient to preserve the cause of action. In support of that argument, the Plan Administrator cites the Ninth Circuit BAP decision in *In re Kelley*, 199 B.R. 698 (B.A.P. 9th Cir. 1996). The court there stated:

> If a confirmed plan expressly reserves the right to litigate a specific cause of action after confirmation, then res judicata does not apply. On the other hand, if the debtor fails to mention the cause of action in either his *schedules, disclosure statement, or plan*, then he will be precluded from asserting it postconfirmation. Even a blanket reservation by the debtor reserving "all causes of action which the debtor may choose to institute" has been held insufficient to prevent the application of res judicata to a specific action.

*Id.* at 704 (internal citations omitted) (emphasis added). Here, the schedules specifically identify Heartland derivative contracts. The Disclosure Statement and Plan include more general reservation of rights provisions, but taken together with the Schedules, they can fairly be read to preserve the claim against Heartland.

Bankruptcy courts around the country, and appellate decisions reviewing bankruptcy court decisions, have not adopted a uniform approach to resolving the issue of what disclosure is required to preserve estate claims. But bankruptcy courts, and subsequent appellate rulings in the Second Circuit, in Chapter 11 cases, have adopted an approach exemplified by Judge Gerber's decision in *In re Perry H. Koplik & Sons, Inc.*:

8

> Courts differ on how specific the language of retention and enforcement must be under section 1123(b)(3)(B). Despite this conflict among the courts, it has been held in this Court, as affirmed by the district court and the Second Circuit, that a debtor's plan of reorganization may reserve postconfirmation claims in general terms. In *I. Appel*, the district court and subsequently the Second Circuit, found a chapter 11 debtor's general reservation of rights to litigate postconfirmation claims to be satisfactory, and rejected the notion that specific causes of action had to be preserved in a plan of reorganization. The *I Appel* court found persuasive the *Ampace* line of cases, which rejected the requirement of the specificity of claims in the plan of reorganization.

357 B.R. 231, 246 (S.D.N.Y. 2006).

Judge Gerber's reference to *I. Appel* is to Judge Marrero's decision in *In re I. Appel Corp.*, 300 B.R. 564, 568 (S.D.N.Y. 2003), which was affirmed by the Second Circuit in a summary order. *See* 104 Fed. App'x 199 (2d Cir. 2004). Judge Gerber's reference to the *Ampace* line of cases refers to Judge Walsh's decision in *In re Ampace Corp.*, 279 B.R. 145, 159 (Bankr. D. Del. 2002).

Judge Marrero in *I. Appel* explained as follows:

> It is neither reasonable nor practical to expect a debtor to identify in its plan of reorganization or disclosure schedules every outstanding claim it intends to pursue with the degree of specificity that the Katzes would require. As other courts reaching this conclusion have noted, mandating a specific description of every claim the debtor intends to pursue could entail months or years of investigation and a corresponding delay in the confirmation of the plan of reorganization. The delay in confirmation of the plan would either delay recovery for creditors or would induce the debtor to abandon valid claims in order to expedite the confirmation process. Neither result is desirable, as the purpose of the Bankruptcy Code is to "achieve the maximum distribution in the minimum time with all creditors of the same class sharing ratably."

*I. Appel*, 300 B.R. at 569 (citations omitted).

Judge Walsh in *Ampace* explained as follows:

9

> Indeed, in large chapter 11 cases, the investigation and litigation of all possible avoidance actions to final judgment can take years. To force the debtor to remain in bankruptcy until a final determination of all possible preference actions is made would act as a detriment to both the debtor and its creditors by slowing down the reorganization process. In most of the large chapter 11 cases in this Court, the plan of reorganization and/or liquidation is often confirmed before the debtor and/or a trustee has undertaken a detailed investigation of the potential preference actions. In large Chapter 11 cases there may be hundreds or even thousands of transaction[s] within the 90-day period and considerable time and effort is needed to examine those transactions in light of the numerous defenses provided for in § 547(c). More often than not, it is appropriate to delay that undertaking until after plan confirmation.

*In re Ampace Corp.*, 279 B.R. at 159.

The approach followed by Judges Marrero, Gerber and Walsh conforms to the plain language of section 1123(b)(3)(B), which "does not require a plan to specify every claim," instead "provid[ing] that the plan *may* do so." *Perry H. Koplik & Sons*, 357 B.R. at 247 (emphasis in original). At least where the estate claim in a liquidating Chapter 11 case is not asserted against a creditor of the debtor, and where the claim was not previously adjudicated by the bankruptcy court or another court at or before plan confirmation, *res judicata* does not bar assertion of the claim.

Heartland relies on the decision in *In re American Preferred Prescription, Inc.*, 266 B.R. 273 (E.D.N.Y. 2000). As the Trust Administrator persuasively explains, that case involved a post-confirmation objection to a claim that had been partially allowed under the plan. Thus, the confirmed plan specified the treatment of the creditor's claim without disclosing that the debtor reserved the right to object to the claim. In contrast, Heartland asserted no claim and received no distribution under the Plan. *See also In re Futter Lumber Corp.*, 2011 WL 5417094, at *6 (Bankr. E.D.N.Y. Nov. 8, 2011), *aff'd*, 473 B.B. 20, 33 (E.D.N.Y. 2012) (explaining that *American Preferred* dealt with a claim that had already been allowed in part and the creditor was

10

not given notice that the debtor reserved rights to further object to the claim). *Rosenbaum v. Keban*, 918 F. Supp. 98 (S.D.N.Y. 1996), also relied on by Heartland, involved deliberate concealment from the court and creditors of the debtor's potential claim. No such circumstance is alleged here.

The Court has considered the remaining arguments raised by Heartland. Each of those arguments is rejected.

### III.  CONCLUSION

For the reasons explained above, Heartland's motion to dismiss is **DENIED.**

**IT IS SO ORDERED.**

Dated:   April 13, 2017
         New York, New York

                                              ___*Martin Glenn*_____
                                                  MARTIN GLENN
                                              United States Bankruptcy Judge